Mera Matthews
Alaska Bar No. 0605020
John Cashion
Alaska Bar No. 9806025
CASHION GILMORE LLC
1007 W. 3rd Avenue, Suite 301
Anchorage, AK 99501
Telephone: (907) 222-7932
Facsimile: (907) 222-7938
Emails: mera@cashiongilmore.com
john@cashiongilmore.com

*Attorneys for Andrea Lauria*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANDREA LAURIA,<br><br>                Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA and CHRIS HEITSTUMAN,<br><br>                Defendant. | Case No. 3:20-cv-00210-SLG |

### OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

COMES NOW Andrea Lauria, by and through counsel Cashion Gilmore LLC and opposes, in part, the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Plaintiff concedes that the Thirteenth Cause of Action for Aided in Agency should be dismissed. The Court has subject matter jurisdiction over the other

claims brought against the United States by Ms. Lauria, and the motion to dismiss should be denied as to all other causes of action.

## I. BACKGROUND

The following facts are taken from the Second Amended Complaint.[1] In the fall of 2017 Plaintiff worked on contract as the head of security at the Anchorage Museum.[2] On September 12, 2017 there was an intoxicated woman causing a disturbance outside of the museum, which apparently included a bomb threat.[3] United States Department of Homeland Security agent Chris Heitstuman responded to the scene.[4] Agent Heitstuman was in uniform, driving an agency vehicle.[5] Heitstuman requested security camera footage of the incident from Plaintiff and the director of the Museum, Julie Decker.[6] Plaintiff and Ms. Decker explained downloading the footage would take time, and Agent Heitstuman directed Plaintiff to contact him later that day when it was done.[7] After downloading the footage Plaintiff contacted Agent Heitstuman as directed.[8] Agent Heitstuman returned to the museum, and wanted to watch the footage immediately. Because the security control booth did not have the equipment needed to watch the footage, Agent Heitstuman and Plaintiff went to Plaintiff's office where they watched the footage on Plaintiff's computer.[9] After

---

[1] Docket 15.
[2] *Id*. para. 7.
[3] *Id*. para. 8.
[4] *Id*.
[5] *Id*. para. 8-9.
[6] *Id*. para. 10.
[7] *Id*.
[8] *Id*. para. 11.
[9] *Id*.

watching the footage Agent Heitstuman sexually assaulted Plaintiff.[10] After the assault Agent Heitstuman pointed to his uniform and indicated that no one would believe Plaintiff that he had assaulted her because he is a Homeland Security Agent.[11]

On September 19, 2017, Agent Heitstuman returned to the museum to follow up on the investigation.[12] Heitstuman went to Plaintiff's office, where he proceeded to rape her.[13] Heitstuman saw Museum Director Julie Decker as he was leaving and told her that he was following up on the investigation.[14] Agent Heitstuman continued to contact and harass Plaintiff throughout the fall of 2017 until Plaintiff obtained a protective order in Alaska state court.[15]

### II. Agent Heitstuman Acted Within the Scope of his Employment When he Assaulted, Harassed, and Stalked the Plaintiff.

The primary argument advanced by the United States is that Agent Heitstuman was not acting within the scope of his employment when he acted improperly toward the Plaintiff, and that the government is therefore shielded from suit. The FTCA provides that the district courts have jurisdiction over civil actions on claims against the United States for "personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment…."[16] An important exception to the FTCA's waiver of

---

[10] *Id*. para. 12.
[11] *Id*.
[12] *Id*. para. 14.
[13] *Id*.
[14] *Id*.
[15] *Id*. para. 15.
[16] 28 U.S.C. § 1346(b)(1).

sovereign immunity is the "intentional tort exception."[17] Under this exception the United States maintains immunity for claims arising out of certain intentional torts such as battery and assault.[18] However Congress carved out an exception to the intentional tort exception specifically for law enforcement officers.[19] This law enforcement exception makes investigative federal law enforcement officers the only federal employees whose intentional torts may give rise to government liability.[20] The acts of investigative federal officers that arise within the scope of employment subject the United States to liability whether or not the officer is directly engaged in the course of executing a search, seizing evidence, or making an arrest when the conduct occurs.[21]

The determination of whether an employee of the United States acted within the scope of his office or employment is a matter of state law.[22] Under Alaska law, whether conduct is within the scope of employment is generally an inquiry for the finder of fact.[23] "The scope of employment is a fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion."[24] "An employee's conduct does not fall outside the scope of employment simply because it is discouraged, or even prohibited. Even crimes and intentional torts may be within

---

[17] *See, e.g., Levin v. United States*, 568 U.S. 503, 507 (2013).
[18] *Id.* at 507 n.1.
[19] 28 U.S.C. § 2680(h).
[20] *Millbrook v. United States*, 569 U.S. 50, 52 (2013).
[21] *Id.* at 56-7.
[22] *Flechsig v. United States*, 991 F.2d 300, 302 (6th Cir. 1993).
[23] *Ondrusek v. Murphy*, 120 P.3d 1053, 1057 (Alaska 1996).
[24] *Id.*

the scope of employment if they serve the employer's interests, albeit in a perverted sense."[25]

The Alaska Supreme Court has looked to the Restatement (Second) of Agency in determining when an employee acts within the scope of employment. According to the Restatement (Second) of Agency:

(1) Conduct of a servant is within the scope of employment if, but only if:
    a. It is of the kind he is employed to perform;
    b. It occurs substantially within the authorized time and space limits
    c. It is actuated, at least in part, by a purpose to serve the master; and
    d. If force is intentionally used by the servant against another, the use of force is not unexpected by the master.[26]

The Alaska Supreme Court has explicitly rejected the view that each of the factors in the Restatement must be satisfied as a prerequisite to recovery, noting instead that the various factors should be weighed by the fact finder in each case.[27]

In the recent case of Lane v. Juneau, 421 P.3d 83 (Alaska 2018), the Alaska Superior Court granted summary judgment on the theory that an employee was not acting within the scope of his employment and the Supreme Court reversed. The employee worked at a city-owned campground as an attendant. Consumption of alcohol was officially prohibited in the campground, but unofficially tolerated.[28] The employee joined a group of campers who were drinking and became extremely intoxicated. He passed around two pistols that belonged to him and reportedly shot

---

[25] *Lane v. Juneau*, 421 P.3d 83, 94-95 (Alaska 2018) (internal citations omitted).
[26] RESTATEMENT (SECOND) OF AGENCY § 228.
[27] *Luth v. Rogers & Babler Constr. Co.,* 507 P.2d 761, 764 (Alaska 1973).
[28] *Lane v. Juneau*, 421 P.3d 83 (Alaska 2018).

OPPOSITION TO MOTION TO DISMISS
Lauria v. United States et al., Case No. 3:20-cv-00210-SLG    Page 5 of 14

Case 3:20-cv-00210-SLG   Document 18   Filed 12/07/20   Page 5 of 14

into the air.[29] One of the campers argued with another camper and used the employee's pistol to shoot the other camper in the face.[30] The injured camper sued the city, alleging that the employee was acting within the scope of his employment at the time of the shooting.[31] The Superior Court concluded that the employee had not acted to "further the employer's interests" and granted summary judgment. The Supreme Court reversed, holding that while some facts supported the Superior Court's conclusion, others did not.[32] The Court emphasized the "flexible and fact-specific nature of the scope-of-employment question" evinced by prior precedent, rather than adhering to a strict formula.[33] The court held that it could not say as a matter of law that the employee's conduct was not "reasonably incidental" to his employment."[34]

A number of courts have concluded that sexual assault can be within the scope of employment for purposes of employer liability under the FTCA. For example, in Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986) the court concluded that the United States could be liable when a patient was sexually abused by her Indian Health Service counselor. Following Washington state agency principles, the court noted that "a master cannot excuse himself when any authorized act was improperly or unlawfully performed nor can he excuse himself when an unauthorized act is done in

---

[29] *Id*. at 87.
[30] *Id*.
[31] *Id*.
[32] *Id*. at 96.
[33] *Id*. at 95.
[34] *Id*. at 95-96.

conjunction with other acts which are within the scope of duties the employee is instructed to perform."[35]

Although Alaska has not specifically addressed immunity from suit when a law enforcement officer commits sexual assault on the job, other courts have concluded that sexual assault is within the scope of employment of law enforcement officers. For example, in Mary M. v. Los Angeles, 814 P.2d 1341 (Cal. 1991), the court examined the policy considerations behind imposing liability on employers. The primary policy reasons are (1) preventing recurrence of the tortious conduct, (2) to give greater assurance of compensation to the victim, and (3) the appropriateness of spreading the risk of loss among beneficiaries of the enterprise.[36] The court concluded that in light of the policy considerations, liability on the employer was appropriate when a police officer raped a member of the public while he was on duty. The court wrote,

> [S]ociety has granted police officers extraordinary power and authority over its citizenry. An officer who detains an individual is acting as the official representative of the state, with all of its coercive power. As visible symbols of that power, an officer is given a distinctively marked car, a uniform, a badge, and a gun. As one court commented 'police officers [exercise] the most awesome and dangerous power that a democratic state possesses with respect to its residents—the power to use lawful force to arrest and detain them.' Inherent in this formidable power is the potential for abuse. The cost resulting from the misuse of that power should be borne by the community,

---

[35] *Simmons v. United States*, 805 F.2d 1363,1369 (9th Cir. 1986) (internal citations omitted).
[36] *Mary M. v. Los Angeles*, 814 P.2d 1341, 1347-1350. These are the same policy considerations underlying the FTCA.

because of the substantial benefits that the community derives from the lawful exercise of police power.[37]

The court concluded that the misuse of authority by police officers is a foreseeable risk appropriately born by the employer. "[T]he risk of such tortious conduct is broadly incidental to the enterprise of law enforcement, and thus liability for such acts may appropriately be imposed on the employing public entity."[38]

In Millbrook v. United States, 569 U.S. 50 (2013) a prisoner was forced to perform oral sex on a correctional officer while another officer held him in a choke hold and the prisoner sought damages under the FTCA. The United States conceded that the conduct occurred within the scope of the correctional officers' employment, but argued it was immune from suit because the officers were not engaged in search, seizure, or arrest at the time. The Supreme Court disagreed and remanded.[39]

In Red Elk v. United States, 62, F.3d 1102 (8th Cir. 1995), a minor was sexually assaulted by a tribal police officer and her guardian brought suit under the FTCA. Analyzing South Dakota law, the court concluded that the United States could be liable. The court wrote "[f]or sexual misconduct on occasion by some officers not to be sufficiently foreseeable to impose vicarious liability would suggest that those in charge are blind to modern reality."[40]

---

[37] *Id*. at 1349 (citing *Policeman's Benev. Ass'n of N.J. v. Washington Tp.*, 850 F.2d 133, 141 (3d Cir. 1988).
[38] *Id*. at 1350.
[39] *Millbrook v. United States*, 569 U.S. 50 (2013).
[40] *Red Elk v. United States*, 62 F.3d 1102, 1108 (8th Cir. 1995).

The United States relies on Veco, Inc. v. Rosebrock, 970 P.2d 906 (Alaska 1999), in support of its argument that an employee who commits sexual assault can never be acting within the scope of his employment. Rosebrock does not stand for this categorical prohibition. The case arose in the context of a punitive damage award against the company for sexual harassment committed by a supervisor. The Alaska Supreme Court noted that an employer can be liable in such circumstances, but limited the employer's punitive damage liability to specific circumstances.[41] The United States also points to D.W.J. v. Wausau Business Insurance, 192 F. Supp. 3d 1014 (D. Alaska 2016), in support of its argument. In D.W.J. the plaintiff, a hotel patron, was sexually assaulted by the front desk clerk. The plaintiff argued that the hotel's insurance policy should provide coverage to the perpetrator/employee. The hotel's insurance policy provided limited coverage to hotel employees, "but only for acts within the scope of their employment … or while performing duties related to the conduct of [the hotel's] business."[42] This court concluded that the hotel employee's conduct was not within the scope of his employment because it met only one of the four Restatement (Second) of Agency requirements—the conduct occurred within the authorized time and space limits. The conduct was not, however, actuated to serve the master, nor could the employer have expected the use of force by the front desk

---

[41] *Veco, Inc. v. Rosebrock*, 970 P.2d 906, 923-34 (Alaska 1999). The Court wrote in a footnote that "imposing vicarious liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjustified." *Id*. at n. 36. Note that *Rosebrock* was decided prior to *Lane v. Juneau*, 421 P.3d 83, 87 (Alaska 2018).

[42] *D.W.J. v. Wausau Bus. Ins.*, 192 F. Supp. 3d 1014, 1018 (D. Alaska 2016).

clerk. This court noted that "[u]nlike a person employed in an occupation where use of force could be expected, such as a security guard, [the perpetrator] was employed as a front desk clerk, a position that should not require any force."[43] Because the conduct could not meet the other factors weighed by the Alaska Supreme Court, this court concluded that the conduct was not within the scope of employment.[44]

The sexual assault in this case was not merely coincidental to Agent Heitstuman's employment. Viewing his conduct in context of the transaction as a whole and in light of the Restatement (Second) of Agency and Alaska precedent, it cannot be stated that as a matter of law he was acting outside the scope of his employment.

Agent Heitstuman's assaults of Plaintiff are plainly within the authorized time and space limits of his employment.[45] He first encountered the Plaintiff while he was on duty responding to an apparent bomb threat at the Plaintiff's place of business. He was in uniform, driving a Homeland Security vehicle. When Agent Heitstuman returned to the museum he wanted to immediately watch the film, again as part of the investigation. Agent Heitstuman watched the film in Plaintiff's office as part of the investigation. Agent Heitstuman then attacked Plaintiff and sexually assaulted her while he was on duty, wearing his uniform, and investigating criminal activity. When Agent Heitstuman returned to the museum on September 19, 2017, and again

---

[43] *Id.* at 1020-21.
[44] *Id.* at 1018-1021.
[45] Whether the non-assaultive wrongful conduct occurred within the time and space limits of Heitstuman's employment is a factual question that must be explored through the discovery process and presented to the fact-finder.

sexually assaulted the Plaintiff he was on duty, in uniform, investigating criminal activity.

Under recent Alaska precedent analyzing the Restatement (Second) of Agency, it cannot be conclusively said that Agent Heitstuman's conduct falls outside the scope of employment because it was not actuated to serve the master. <u>Lane v. Juneau</u>, which was decided after <u>Rosebrock</u> and <u>D.W.J.</u> is most instructive here.[46] In <u>Lane</u> the Court concluded that as a matter of law the campground attendant's actions of getting intoxicated with campers, shooting his guns into the air, and passing his guns around which resulted in someone being shot in the face was could be "reasonably incidental" to his employment. This language mirrors the language in <u>Mary M.</u> where the California Supreme Court found that sexual assault by a police officer was "broadly incidental" to the officer's employment.[47] Agent Heitstuman's actions were within the scope of his employment or at minimum reasonably incidental to the scope of his employment. He was on duty responding to a possible crime, he was in uniform, and he was performing follow-up investigative functions. To conclude that the action in <u>Lane</u> could reasonably be within the scope of employment but the action here could not reflect an outdated bias that violence is ordinary foreseeable human conduct, whereas sexual violence is a special category. As the court in <u>Red</u>

---

[46] 421 P.3d 83. Lane was decided in 2018. Rosebrock was decided in 1999, and D.W.J. was decided in 2016.
[47] *Mary M. v. Los Angeles*, 814 P.2d 1341, 1350 (Cal. 1991).

OPPOSITION TO MOTION TO DISMISS
*Lauria v. United States et al.,* Case No. 3:20-cv-00210-SLG     Page 11 of 14

Case 3:20-cv-00210-SLG   Document 18   Filed 12/07/20   Page 11 of 14

Elk stated, denying the foreseeability of sexual misconduct by law enforcement officers "would suggest that those in charge are blind to modern reality."[48]

The facts in this case meet the third factor of the Restatement (Second) of Agency. Agent Heitstuman intentionally used force against Plaintiff. As a law enforcement agent, his employer could reasonably expect that he would use force in the course of his employment. Like the "security guard" imagined in D.W.J., the use of force by Agent Heitstuman was not unexpected.[49]

The policy considerations underlying the FTCA are served by determining that Agent Heitstuman's conduct was within the scope of his employment.[50] Holding the United States accountable for Agent Heitstuman's tortious conduct stands to create accountability and prevent recurrence of the abuse of power by Homeland Security agents. It also provides greater assurance to the Plaintiff and victims like her of compensation. Finally, it is appropriate to spread the risk of loss among the United States and by extension the public, who benefit significantly from federal law enforcement.

### III. The Court Has Jurisdiction Over Plaintiff's Claims Alleging that the United States was Negligent

The United States argues that Plaintiff's claims based on negligence should be dismissed because they were not exhausted at the administrative level. In reality the

---

[48] 62 F.3d 1102, 1108 (8th Cir. 1995).
[49] *D.W.J. v. Wausau Bus. Ins. Co.*, 192 F.Supp.3d 1014, 1020.
[50] *See, e.g., Mary M. v. Los Angeles*, 814 P.2d 1341, 1347-1350.

OPPOSITION TO MOTION TO DISMISS
*Lauria v. United States et al.,* Case No. 3:20-cv-00210-SLG			Page 12 of 14

Case 3:20-cv-00210-SLG   Document 18   Filed 12/07/20   Page 12 of 14

claims were included in the intentionally broad administrative claim, and any reasonable reader would agree.

The administrative claim lists no specific causes of action, instead setting forth the factual background of what occurred. The document titled "Basis Of Claim" lists the United States Department of Homeland Security as the "defendant." The "Basis of Claim" document goes on to identify as causes of the harm Plaintiff suffered "Officer Heitstuman's intentional acts" and separately "the culpable conduct of Defendant [United States Department of Homeland Security]."

The Department of Homeland Security had a separate duty to protect members of the public, like the Plaintiff, from harm, which it failed to do. These claims were discernible to any educated reader at the administrative level and should therefore not be dismissed.

For these reasons the Motion to Dismiss should be granted as to the Thirteenth Cause of Action in the Second Amended Complaint and denied as to all other causes of action.

DATED this 7th day of December, 2020 at Anchorage, Alaska.

    CASHION GILMORE LLC
    Attorneys for Andrea Lauria

    /s/ *Mera Matthews*

    _____
    Mera Matthews
    Alaska Bar No. 0605020
    John P. Cashion
    Alaska Bar No. 9806025

**CERTIFICATE OF SERVICE:**

I hereby certify that a true and correct copy
of the foregoing was served electronically
on December 7, 2020 via the Court's CM/ECF
system on the following:

Marie Scheperle
Marie.Scheperle@usdoj.gov

Seth Beausang
seth.beausang@usdoj.gov

CASHION GILMORE LLC

By:  s/ Mera Matthews