# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANDREA LAURIA,<br><br>               Plaintiff,<br>     v.<br><br>UNITED STATES OF AMERICA and<br>BERT CHRISTOPHER HEITSTUMAN,<br><br>              Defendants. | Case No. 3:20-cv-00210-SLG |

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 17 is the United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1] Plaintiff Andrea Lauria responded in opposition at Docket 18. The United States replied at Docket 20. Oral argument was not requested and was not necessary to the Court's decision. For the following reasons, the United States' motion will be granted in part and denied in part.

## BACKGROUND

The allegations in Plaintiff's Third Amended Complaint are as follows: In the fall of 2017, Plaintiff worked as Head of Security for the Anchorage Museum. On the morning of September 12, 2017, Plaintiff contacted law enforcement because

---

[1] The United States filed its motion to dismiss prior to the filing of Plaintiff's third amended complaint; however, the United States stated that its motion "should be considered to apply to the Third Amended Complaint without needing additional briefing." Docket 22 at 2 (Non-Opp. to Plaintiff's Mot. for Leave to File Third Am. Compl.).

an intoxicated woman was causing a disturbance outside the museum, including allegedly making a bomb threat. While waiting outside for Anchorage police to arrive, a Department of Homeland Security ("DHS") officer drove by and stopped. That individual was Homeland Security Officer Bert Christopher Heitstuman who, in official uniform, approached Plaintiff and gave the impression that he was responding to the incident.[2]

As part of his purported investigation, Mr. Heitstuman requested video footage of the incident. Plaintiff explained that it would take some time to download, and Mr. Heitstuman directed her to contact him later that day when it was ready. When Mr. Heitstuman returned to ostensibly collect the footage, he sexually assaulted Plaintiff. After the attack, Mr. Heitstuman threatened Plaintiff, pointing to his uniform and stating that no one would believe her because of his position in law enforcement. Mr. Heitstuman contacted Plaintiff several times over the following days, demanding that she engage with him in a sexually explicit manner.[3]

On or about September 19, 2017, Mr. Heitstuman returned to the museum in his Homeland Security uniform under the pretext of following up on his purported investigation. Mr. Heitstuman went to Plaintiff's office, where he again sexually

---

[2] Docket 25 at 3, ¶¶ 7, 8 (Third Am. Compl.). Anchorage police officers arrived subsequently and arrested the woman who caused the disturbance. Docket 25 at 3, ¶ 9; Docket 19-1 at 9 (Admin. Claim Form); Docket 17 at 6, 11 (Mot. to Dismiss).

[3] Docket 25 at 3–4, ¶¶ 10–13 (Third Am. Compl.).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 2 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 2 of 20

assaulted her.  Mr. Heitstuman again warned Plaintiff, stating that no one would believe her because he was a Homeland Security officer.[4]

Mr. Heitstuman continued to harass Plaintiff through October 2017.  Plaintiff eventually contacted the police and obtained a protective order.  On February 25, 2021, Mr. Heitstuman was criminally indicted on seven counts of sexual assault, involving incidents with three different victims that occurred between 2012 and 2018.[5]

As relevant here, Plaintiff brings several claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*.  Plaintiff alleges that Mr. Heitstuman committed various intentional torts while acting within the scope of his employment as a federal law enforcement officer; that the United States negligently hired, trained, and supervised Mr. Heitstuman; and that the United States negligently inflicted emotional distress on Plaintiff.[6]

## LEGAL STANDARD

### I. Federal Tort Claims Act

The FTCA provides for a limited waiver of sovereign immunity by granting federal district courts jurisdiction over "civil actions on claims against the United

---

[4] Docket 25 at 4, ¶ 14 (Third Am. Compl.).

[5] Docket 25 at 5, ¶¶ 15, 16 (Third Am. Compl.) (citing Docket 25-1 (Indictment)).

[6] Docket 25 at 6–11, ¶¶ 21–53 (Third Am. Compl.) (Causes of Action).  Plaintiff has also pleaded an aided-in-agency cause of action.  Docket 25 at 11–12, ¶¶ 54–56.  However, Plaintiff expressly abandoned this claim in her opposition brief.  Docket 18 at 1 (Opp.) ("Plaintiff concedes that the Thirteenth Cause of Action for Aided in Agency should be dismissed.").

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 3 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 3 of 20

States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[7]

The Act, however, does not waive sovereign immunity for certain categories of intentional torts, specifically those "arising out of assault, battery, [or] false imprisonment."[8]  However, there is an exception to the intentional tort exception known as the "law enforcement proviso," which waives sovereign immunity for certain intentional tort claims committed by "investigative or law enforcement officers of the United States Government."[9]  The Act also retains sovereign immunity for acts "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."[10]  In addition, the FTCA requires a plaintiff to first exhaust administrative remedies before pursuing a claim in federal court.[11]

---

[7] 28 U.S.C. § 1346(b)(1).  The FTCA is the exclusive remedy for torts committed by employees of the United States while acting within their scope of their employment.  *See United States v. Smith*, 499 U.S. 160, 166 (1991); *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996).

[8] 28 U.S.C. § 2680(h).

[9] § 2680(h).  The statute defines an investigative or law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

[10] 28 U.S.C. §§ 2680(a).  This provision is known as the "discretionary function exception."

[11] 28 U.S.C. § 2675(a).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 4 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 4 of 20

## II.   Federal Rule of Civil Procedure 12(b)

The question of whether the United States has waived its sovereign immunity under the FTCA is one of subject matter jurisdiction and may be considered under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) or both.[12]  Pursuant to Rule 12(b)(1), a defendant may attack a complaint for lack of subject matter jurisdiction either by a "facial" or a "factual" attack.[13]  In a facial attack, the defendant accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction."[14]  In a factual attack, a defendant may present extrinsic evidence to demonstrate that the complaint lacks jurisdiction based on the facts of the case.[15]

Here, the United States brings a facial attack.  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."[16]  In an FTCA case, "a plaintiff must plausibly

---

[12] *See Brownback v. King*, 141 S. Ct. 740, 749 & n.8 (2021) (holding that when in an FTCA case "pleading a claim and pleading jurisdiction entirely overlap," the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6) or both); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (applying Rule 12(b)(1) to motion to dismiss FTCA claim).

[13] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[14] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[15] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Safe Air for Everyone*, 373 F.3d at 1039.

[16] *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 5 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 5 of 20

allege that 'the United States, if a private person, would be liable to the claimant' under state law."[17] Before a court may dismiss any portion of a complaint for failure to state a claim upon which relief may be granted, the court must provide the plaintiff with a statement of the deficiencies in the complaint and an opportunity to amend or otherwise address the problems, unless to do so would be futile.[18]

## DISCUSSION

### I. Claim Presentation Requirement

The United States asserts that Plaintiff failed to present to the agency her negligent hiring, training, and supervision and negligent infliction of emotional distress claims, as required by 28 U.S.C. § 2675(a), because the administrative claim form that Plaintiff submitted to DHS "relate[d] only to Heitstuman's intentional acts."[19] The United States highlights that "Plaintiff attached a pleading-style document to her claim that mirrored parts of her federal court complaint but omitted the parts that alleged negligence on behalf of DHS."[20] Plaintiff responds that she submitted an "intentionally broad administrative claim" that set "forth the factual background of what occurred."[21] Plaintiff contends that DHS's "separate duty to

---

[17] *Brownback*, 141 S. Ct. at 749 (quoting 28 U.S.C. § 1346(b)(1)).

[18] *Garmon v. Cnty. of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

[19] Docket 17 at 2, 12–13 (Mot. to Dismiss) ("The Court does not have jurisdiction over Plaintiff's negligence claims against the United States because she did not present a negligence claim to the appropriate agency before bringing those claims, as required by the FTCA.").

[20] Docket 20 at 14–15 (Reply) (citing Docket 19-1 at 5–8 (Admin. Claim Form)).

[21] Docket 18 at 12–13 (Opp.).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 6 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 6 of 20

protect members of the public, like the Plaintiff, from harm" would be "discernible to any educated reader at the administrative level and should therefore not be dismissed."[22]

A district court cannot exercise subject matter jurisdiction over an FTCA action unless the plaintiff "shall have first presented the claim to the appropriate Federal agency."[23] "A claim is deemed presented for purposes of § 2675(a) when a party files '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'"[24] The claim presentation requirement "is designed to ensure that compensation is provided in a fair and equitable manner, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their merits."[25] Accordingly, the Ninth Circuit has "consistently interpreted the notice required under section 2675(a) as minimal."[26] "[A] skeletal

---

[22] Docket 18 at 13 (Opp.).

[23] 28 U.S.C. § 2675(a).

[24] *Blair v. IRS*, 304 F.3d 861, 864 (9th Cir. 2002) (quoting *Warren v. United States Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir.1984) (en banc)). The parties do not dispute that Plaintiff presented a "sum certain damages claim."

[25] *Id*. at 868 (internal quotation marks omitted).

[26] *Shipek v. United States*, 752 F.2d 1352, 1354 (9th Cir. 1985) (holding that a plaintiff "should not be jurisdictionally limited by her administrative claim from pursuing any legal theory encompassed by the facts set forth in her claim").

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 7 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 7 of 20

claim form, containing only the bare element[] of notice of accident and injury . . . suffices to overcome an argument that jurisdiction is lacking."[27]

*Broudy v. United States* is instructive here.[28] In that case, the Ninth Circuit considered the sufficiency of the plaintiff's administrative claim that alleged injury stemming from exposure to radiation.[29] The court held that the claim, which stated "the location and date of the accident, the nature and extent of the injury . . . and a description of how the accident occurred[,] . . . gave the agency notice to commence investigation by providing information concerning the accident and injury."[30] The government in that case, however, contended that the plaintiff's administrative claim did "not refer to the separate post-service tort of the [g]overnment's alleged failure to warn" the plaintiff about the dangers associated with radiation exposure.[31] The Ninth Circuit squarely rejected this argument. The court stated that "[w]e see nothing in section 2675(a) or the regulations which require the claimant to state with great specificity the legal theories to be asserted in the eventual FTCA action."[32] The court concluded that, "in keeping with the

---

[27] *Avery v. United States*, 680 F.2d 608, 610 (9th Cir. 1982) ("[W]e hold that where a claimant gives notice of the manner and general circumstances of injury and the harm suffered . . . he has complied with section 2675(a)").

[28] 722 F.2d 566 (9th Cir. 1983).

[29] *Id.* at 567.

[30] *Id.* at 568–69.

[31] *Id.*

[32] *Id.* at 568–69.

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 8 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 8 of 20

Congressional purpose of 'providing fair and equitable treatment of private individuals and claimants when they deal with the Government,' we hold that appellant satisfied the requirements of section 2675(a) and the accompanying regulations."[33]

Here, Plaintiff submitted an administrative claim to the appropriate agency, DHS.[34] Plaintiff attached to the standard form a pleading-style "Basis of Claim" document, which principally set forth the factual events surrounding the sexual assaults.[35] As the United States accurately points out, Plaintiff "omitted the parts [of the pleading-style document] that alleged negligence on behalf of DHS."[36] However, under Ninth Circuit precedent, Plaintiff's omission of the negligence claims against the United States does not necessarily defeat the claim presentation requirement. Like the plaintiff in *Broudy*, Plaintiff here provided the location and date of the incident, the nature and extent of the injury, and a description of how the incident occurred.[37] This information gave DHS sufficient "notice to commence investigation by providing information concerning the

---

[33] *Id.* at 569 (quoting S. Rep. No. 1327, at 2 (1966)).

[34] *See* Docket 19-1 (Admin. Claim Form).

[35] Docket 19-1 at 5–8 (Admin. Claim Form). Plaintiff also attached a news article about the incident. Docket 19-1 at 9.

[36] Docket 20 at 14–15 (Reply) (citing Docket 19-1 at 5–8 (Admin. Claim Form)).

[37] *Broudy*, 722 F.2d at 568.

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 9 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 9 of 20

accident and injury."[38] Plaintiff was not required to "state with great specificity the legal theories to be asserted in the eventual FTCA action [here]."[39]

Furthermore, Plaintiff's claim form went beyond what is required by Ninth Circuit precedent. In the form, Plaintiff stated that "[a]s a direct and proximate result of Officer Heitstuman's intentional acts and *the culpable conduct of [DHS]* Ms. Lauria has suffered physical pain and ongoing extreme emotional distress."[40] This statement was sufficient to place the United States on notice that it too may be independently liable, especially in light of Plaintiff's allegation that the United States received numerous complaints about Mr. Heitstuman's inappropriate conduct prior to the assault of Plaintiff.[41]

The United States relies on one precedential case, *Goodman v. United States*.[42] But *Goodman* addressed a discrete issue and otherwise reiterated circuit precedent.[43] The Ninth Circuit held that a plaintiff "need only file a brief notice or statement with the relevant federal agency containing a general description of the

---

[38] *Id.*

[39] *Id.* at 568–69; *Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980) ("The Government would have us also require a claimant to state his legal theory for recovery. This we cannot do.").

[40] Docket 19-1 at 8, ¶ 14 (Admin. Claim Form) (emphasis added).

[41] Docket 25 at 5, ¶¶ 18, 19 (Third Am. Compl.).

[42] 298 F.3d 1048 (9th Cir. 2002); Docket 17 at 13 (Mot. to Dismiss); Docket 20 at 3 (Reply).

[43] The court in *Goodman* addressed "whether an administrative claim that alleges negligent care and treatment by hospital personnel *necessarily* presents an informed consent claim for purposes of satisfying the notice requirements of section 2675(a)." 298 F.3d at 1055 (emphasis added). The *Goodman* court declined to adopt that categorical rule, but nonetheless held that the administrative claim adequately presented a lack of informed consent claim. *Id.* at 1057.

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 10 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 10 of 20

time, place, cause and general nature of the injury."[44] "Furthermore," the court continued, "the notice requirement under section 2675 is minimal, and a plaintiff's administrative claims are sufficient even if a separate basis of liability arising out of the same incident is pled in federal court."[45] Accordingly, *Goodman* supports the sufficiency of Plaintiff's administrative claim.

In conclusion, the Court finds that Plaintiff's administrative claim form meets the Ninth Circuit's minimal presentation requirement and, therefore, Plaintiff's negligent hiring, training, and supervision and negligent infliction of emotional distress claims against the United States are not barred by Section 2675(a).[46] The United States' motion to dismiss these claims on this basis will be denied.[47]

---

[44] *Id.* at 1055 (citing *Warren*, 724 F.2d at 779 and *Avery*, 680 F.2d at 610).

[45] *Id.*

[46] *See, e.g.*, *Boyd v. AMR Hous.*, Case No. CV 06-00373 HG-LEK, 2007 WL 9711275, at *8 (D. Haw. Mar. 22, 2007) (holding plaintiff's administrative claim form sufficient for purposes of § 2675(a) even though it "d[id] not expressly include a failure to train or supervise claim"); *Bennion v. United States*, Case No. CV04-614-N-EJL, 2006 WL 1663596, at *3 (D. Idaho June 7, 2006) (permitting premises liability claim to move forward under § 2675(a) even though administrative claim only stated negligence of government employee).

[47] *But see* 28 U.S.C. § 2680(a); *Miller v. United States*, 992 F.3d 878, 886 (9th Cir. 2021) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (holding that "policy-making defendants' allegedly negligent and reckless employment, supervision and training" of customs agents "fall squarely within the discretionary function exception"). In its briefing, the United States did not assert that this exception applied.

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 11 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 11 of 20

## II. Scope of Employment

The FTCA only applies to claims based on the conduct of a federal employee "acting within the scope of his office or employment."[48] "FTCA scope of employment determinations are made 'according to the principles of *respondeat superior* of the state in which the alleged tort occurred.'"[49]

Here, the alleged tort occurred in Alaska. In determining whether an employee was acting within his scope of employment, Alaska courts apply a "flexible, multi-factored test."[50] Under this test, "an employee acts within the scope of employment if the employee (1) performs the kind of work the employee was hired to perform, (2) acts within the employer's authorized time and space limits, and (3) acts in order to further the employer's interests."[51]

---

[48] 28 U.S.C. § 1346(b)(1).

[49] *Drake*, 87 F.3d at 1076 (quoting *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992)).

[50] *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344, 346 (Alaska 1990).

[51] *Lane v. City of Juneau*, 421 P.3d 83, 95 (Alaska 2018) (internal quotation marks omitted). This test is derived from Section 228 of the Restatement (Second) of Agency. *See Samaritan Counseling Ctr.*, 791 P.2d at 347. Section 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>    (a) it is of the kind he is employed to perform;
>
>    (b) it occurs substantially within the authorized time and space limits;
>
>    (c) it is actuated, at least in part, by a purpose to serve the master, and
>
>    (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 12 of 20

Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 12 of 20

Principally relying on this Court's decision in *D.W.J. v. Wausau Business Insurance Co.*,[52] which addressed the Alaska Supreme Court's decision in *VECO, Inc. v. Rosebrock*,[53] the United States asserts that Mr. Heitstuman's conduct cannot fall within the scope of his employment as a matter of law.[54] The United States further asserts that the third Restatement factor is independently determinative of the scope of employment question under *Rosebrock*.[55] Plaintiff responds that *Rosebrock* "does not stand for [the] categorical prohibition" that "an employee who commits sexual assault can never be acting within the scope of his employment."[56] Plaintiff explains that *Rosebrock* "arose in the context of a punitive damage award against the company for sexual harassment committed by a supervisor [and] [t]he Alaska Supreme Court noted that an employer can be liable

---

purpose to serve the master.

However, the Alaska Supreme Court has held that Restatement factors "are relevant considerations, but are not determinative of the *respondeat superior* analysis." Rather, the factors are "guidelines which are useful in making . . . the determination as to when an employee's tort will be attributed to the employer." *Samaritan Counseling Ctr.*, 791 P.2d at 347 (quoting *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 349 (Alaska 1982)).

[52] 192 F. Supp. 3d 1014 (D. Alaska 2016).

[53] 970 P.2d 906 (Alaska 1999).

[54] Docket 17 at 9–10 (Mot. to Dismiss); Docket 20 at 4–7 (Reply).

[55] Docket 17 at 9 (Mot. to Dismiss).

[56] Docket 18 at 9 (Opp.).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 13 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 13 of 20

in such circumstances, but limited the employer's punitive damage liability to specific circumstances."[57]

Plaintiff is correct that the scope of employment issue in *Rosebrock* was in the context of reviewing a jury instruction that permitted the jury to award punitive damages against an employer for sexual harassment committed by a supervisor, irrespective of whether the jury found the supervisor was acting within the scope of his employment.[58] *Rosebrock* did not address whether sexual assault, stalking, or harassment can never fall within an employee's scope of employment, as a matter of law, in a vicarious liability context.[59]

Plaintiff also contends that the Alaska Supreme Court's recent decision in *Lane v. City of Juneau*, 421 P.3d 83 (2018), which was decided after *Rosebrock*

---

[57] Docket 18 at 9 (Opp.).

[58] *Rosebrock*, 970 P.2d at 923–24 (holding trial court erred in instructing jury that it could award punitive damages against employer for acts of supervisor beyond scope of supervisor's employment).

[59] This Court's language in *D.W.J.*, 192 F. Supp. 3d at 1020, too broadly pronounced that "[u]nder *Rosebrock*, an employee must be acting at least in part with a purpose to serve the master, and an employee perpetrating a sexual assault cannot do such." At that time, this Court lacked the benefit of the Alaska Supreme Court's decision in *Lane*, which is discussed below.

Plaintiff also raises legitimate questions as to whether *Rosebrock's* language concerning the dispositive nature of the third Restatement factor is dicta given that the scope of employment was not directly at issue in that case. *See Rosebrock*, 970 P.2d at 924 n.36 ("In *Doe v. Samaritan Counseling Center*, 791 P.2d 344, 348 (Alaska 1990), we stated the 'motivation to serve' test would be satisfied 'where tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities.' To the extent that this language suggests that the employee's act need not be motivated in fact at least to some degree to serve the master's business we disapprove of it."). *But see Lane*, 421 P.3d at 95 n.73 ("We have 'rejected the Second Restatement's view that each of the [section] 228(1)[] factors must be satisfied prerequisite to recovery, and noted instead that the importance of various factors' should be weighed by the fact-finder in each case." (quoting *Samaritan Counseling Ctr.*, 791 P.2d at 347 (alterations in original)).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 14 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 14 of 20

and *D.W.J.*, instructs that "it cannot be conclusively said that Agent Heitstuman's conduct falls outside the scope of employment because it was not actuated to serve the master."[60] Plaintiff asserts that Mr. Heitstuman's conduct was "at minimum reasonably incidental to the scope of his employment" because "[h]e was on duty responding to a possible crime, he was in uniform, and he was performing follow-up investigative functions."[61] The United States argues that *Lane* is factually distinguishable.[62]

In *Lane*, a shooting victim at a campground sued the municipality that operated it. The shooting victim asserted that the campground's caretaker had performed his duties negligently, that his negligence caused the shooting, and that the municipality was vicariously liable. The caretaker had become heavily intoxicated with several campers and passed around two firearms, conduct that was strictly prohibited by campground rules. After a dispute, another camper shot the plaintiff camper with one of the caretaker's firearms. The caretaker's job duties arguably included socializing with campground residents. The trial court granted summary judgment to the municipality.[63]

---

[60] Docket 18 at 11 (Opp.).

[61] Docket 18 at 11 (Opp.).

[62] Docket 20 at 8 (Reply).

[63] *Lane*, 421 P.3d at 86–88.

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 15 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 15 of 20

Reversing the trial court, the Alaska Supreme Court held "we cannot . . . conclude as a matter of law that [the caretaker's] conduct was not 'reasonably incidental' to his employment."[64] The court first observed that the scope of employment issue is a "fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion."[65] The court then held that while "[s]ome of the facts in the record support the [] conclusion" that the caretaker was acting outside the scope of his employment, others did not, including that he was supposed to "'be available' to campers"; that he testified he was "'off the clock,' but in fact he had no set work hours"; and that his "mere presence at the campground may have benefit[]ed" his employer.[66] The court concluded that "[o]ur precedent has established that an employee who exercises poor judgment . . . may nevertheless act within the scope of his employment. And [the caretaker's] poor judgment in this case does not conclusively demonstrate that his behavior on the night of the shooting was not 'reasonably incidental' to his work responsibilities. One could argue that [the caretaker] was doing his job but doing it poorly."[67]

---

[64] *Id.* at 95; *see Samaritan Counseling Ctr.*, 791 P.2d at 348 ("[W]here tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the "motivation to serve" test will have been satisfied.").

[65] *Lane*, 421 P.3d at 94 (quoting *Ondrusek v. Murphy*, 120 P.3d 1053, 1057 (Alaska 2005)).

[66] *Id.* at 95.

[67] *Id.* at 95–96 (citing *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1099 (Alaska 2002)).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 16 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 16 of 20

Like the plaintiff in *Lane*, Plaintiff plausibly alleges that Mr. Heitstuman was acting within the scope of his employment when he was investigating a disturbance near the federal building in downtown Anchorage. Plaintiff alleges that Mr. Heitstuman was in uniform, drove a Homeland Security vehicle, and, at least implicitly, represented that he had the authority to investigate the museum incident.[68] These allegations support the assertion that Mr. Heitstuman's conduct may have been reasonably incidental to his employment because the assaults occurred in the context of the purported investigation. And even though Mr. Heitstuman's conduct may have been criminal or an intentional tort, that conduct allegedly occurred in the context of—or was even facilitated by—Mr. Heitstuman's employment as a DHS officer.[69]

The United States attempts to dispute that Mr. Heitstuman had the authority to investigate at the museum.[70] However, the statutory language cited by the United States, 40 U.S.C. § 1315, does not categorically preclude Mr. Heitstuman's purported investigation. Pursuant to Section 1315, the Secretary of Homeland Security may designate "officers and agents for duty in connection with the

---

[68] *See, e.g.*, Docket 25 at 3, ¶¶ 8, 9 (Third Am. Compl.).

[69] The United States also attempts to distinguish *Lane* on the basis that "the caretaker in *Lane* was not accused of a violent act" unlike Mr. Heitstuman here. Docket 20 at 9 (Reply). However, this is a distinction without a difference, especially given the Alaska Supreme Court's instructions that "even crimes and intentional torts may be within the scope of employment if they serve the employer's interests." *Lane*, 421 P.3d at 95.

[70] Docket 17 at 10 (Mot. to Dismiss).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 17 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 17 of 20

protection of property owned or occupied by the Federal Government and persons on the property, including duty in *areas outside the property* to the extent necessary to protect the property and persons on the property."[71] Officers and agents are empowered to "enforce Federal laws and regulations for the protection of persons and property" and "conduct investigations, *on and off the property in question*, of offenses that *may* have been committed against property owned or occupied by the Federal Government or persons on the property."[72] Based on this language, and given the museum's proximity to the federal building in downtown Anchorage, it cannot be conclusively said that Mr. Heitstuman wholly lacked authority to conduct an investigation of a disturbance at the museum.[73] Accepting as true the allegations in the operative complaint, the Court cannot "conclude as a matter of law that [Mr. Heitstuman's] conduct was not 'reasonably incidental' to his employment."[74]

---

[71] 40 U.S.C. § 1315(b)(1) (emphasis added).

[72] 40 U.S.C. § 1315(b)(2)(A), (E) (emphasis added).

[73] As the United States recognizes, the incident included a bomb threat. *See* Docket 17 at 6, 11 (Mot. to Dismiss). Further, according to a news article attached to Plaintiff's administrative claim form, Anchorage "Police [] contacted the Department of Homeland Security to work on evacuating the museum during the incident." Docket 19-1 at 9. The fact that DHS may have played a substantive role in responding to the incident supports Plaintiff's allegations that Mr. Heitstuman was acting within the scope of his employment. It also raises some question as to whether DHS has some responsibility or authority over the museum property itself. But at the motion to dismiss stage, the Court need not resolve these issues.

[74] *Lane*, 421 P.3d at 95.

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 18 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 18 of 20

Alaska Supreme Court precedent supports Plaintiff's position that criminal or intentional conduct does not categorically fall outside the scope of employment as a matter of law. As discussed in *Lane*:

> An employee's conduct does not fall outside the scope of employment simply because it is discouraged, or even prohibited. We have noted that even crimes and intentional torts may be within the scope of employment if they serve the employer's interests, albeit "in a perverted sense." For example, we have held that a union steward who incited a violent confrontation with a rival union was "motivated, at least in part," to serve his union's interests; that a therapist's abusive sexual relationship with a patient could be found to be "incidental" to the therapist's professional duties; and that a school bus driver with "trace amounts of marijuana" in her system acted within the scope of her employment because she nonetheless "carried out the very function [she] was hired to perform—driving a school bus." In each of these cases we noted the "flexible" and fact-specific nature of the scope-of-employment question.[75]

Given Plaintiff's plausible allegations that Mr. Heitstuman's conduct during his investigation at the museum was reasonably incidental to his employment, the United States' motion to dismiss the tort claims based on Mr. Heitstuman's conduct will be denied.

## CONCLUSION

In light of the foregoing, IT IS ORDERED THAT the United States' Motion to Dismiss at Docket 17 is GRANTED IN PART and DENIED IN PART as follows:

The United States' Motion to Dismiss is GRANTED as to Count 13.

---

[75] *Lane*, 421 P.3d at 94–95 (citing *Williams*, 650 P.2d at 350 (union steward); *Samaritan Counseling Ctr.*, 791 P.2d at 348 (therapist); and *Laidlaw Transit, Inc.*, 53 P.3d at 1096, 1099 (school bus driver)) (alteration in original) (footnotes omitted).

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 19 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 19 of 20

The United States' Motion to Dismiss is DENIED as to Counts 1–12.

It is FURTHERED ORDERED that proof of service as to defendant Heitstuman shall be filed forthwith. Pursuant to Federal Rule of Civil Procedure 4(m), service was to have been accomplished within 90 days from the filing of the complaint.

Dated this 4th day of June, 2021, at Anchorage, Alaska.

> */s/ Sharon L. Gleason*
> UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00210-SLG, *Lauria v. United States, et al.*
Order re Motion to Dismiss
Page 20 of 20
Case 3:20-cv-00210-SLG   Document 26   Filed 06/04/21   Page 20 of 20