**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

ANDREA LAURIA,

             Plaintiff,

     v.

UNITED STATES OF AMERICA and
BERT CHRIS HEITSTUMAN,

            Defendants.

Case No. 3:20-cv-00210-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT AND MOTION TO PARTIALLY PRECLUDE EXPERT OPINION OF JUDY GETTE

Before the Court at Docket 71 is the United States' Motion for Summary Judgment. Plaintiff Andrea Lauria responded in opposition at Docket 80, to which the United States replied at Docket 82. Also before the Court is the United States' Motion to Partially Preclude Expert Opinion of Judy Gette at Docket 72. Ms. Lauria responded in opposition at Docket 77, to which the United States replied at Docket 79. Oral argument was not requested on either motion and was not necessary to the Court's determination.

## BACKGROUND

The facts, viewed in the light most favorable to Ms. Lauria for purposes of the United States' motion for summary judgment, are as follows:[1] In the fall of 2017, Ms.

---

[1] *See* summary judgment legal standard *infra* p. 9.

Lauria worked as Head of Security for the Anchorage Museum.[2]  On the morning of September 12, 2017, Ms. Lauria contacted law enforcement because a woman was causing a disturbance at the loading dock outside of the museum, including allegedly making a bomb threat.[3]  While waiting outside for Anchorage police to arrive, she flagged down what appeared to be a police car but was actually a Department of Homeland Security ("DHS") officer driving by in a DHS vehicle.[4]  The DHS officer was Defendant Bert Christopher Heitstuman, who, in official uniform, pulled over and asked Ms. Lauria what was happening.[5]  After Ms. Lauria explained the situation, Mr. Heitstuman approached the woman causing the disturbance, who "was screaming and hollering and throwing things from the loading dock."[6]  Anchorage Police Department ("APD") officers subsequently arrived at the loading dock and made contact with the woman.[7]

Ms. Lauria then contacted Julie Decker, the director the museum, and informed her of the situation.[8]  Ms. Lauria, Ms. Decker, Mr. Heitstuman, and several other museum security officers gathered in the museum security control booth to observe

---

[2] Docket 71-2 at 10, 49, 212 (Lauria Dep.).

[3] Docket 71-2 at 43-44; Docket 71-3 at 2-3.

[4] Docket 71-2 at 44-45.

[5] Docket 71-2 at 45.

[6] Docket 71-2 at 46.

[7] Docket 71-2 at 46.

[8] Docket 71-2 at 47.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 2 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 2 of 38

what was happening at the loading dock, where events were "still unfolding."[9]  Mr. Heitstuman requested video footage of the incident from Ms. Lauria, and, after verbal authorization from Ms. Decker, Ms. Lauria contacted the servicing company to retrieve the footage.[10]  Mr. Heitstuman indicated he would "let [APD] know" about the wait time in retrieving the video footage and subsequently departed.[11]  Later in the day, Mr. Heitstuman returned to the museum and told Ms. Lauria that he wanted to view the footage.[12]  The control booth did not have the proper equipment to play the video footage, but after prompting from Mr. Heitstuman, Ms. Lauria allowed him to use the computer in her office to view the footage.[13]  While they were reviewing the footage, Mr. Heitstuman told Ms. Lauria to stand up.[14]  When she did, Ms. Lauria alleges that Mr. Heitstuman "grabbed [her] arm," "bent it behind [her] back," and "shoved [her] by [her] back" over a chair.[15]  Mr. Heitstuman then "[t]hrust[] . . . his groin" against Ms. Lauria, with "his upper chest . . . laying on [her] back."[16]  Ms. Lauria "tr[ied] to push him off of [her] back" with her right hand and "was saying, 'No.  Don't.

---

[9] Docket 71-2 at 50-53.

[10] Docket 71-2 at 58, 62-63, 76.

[11] Docket 71-2 at 65-66, 72.

[12] Docket 71-2 at 77-78.

[13] Docket 71-2 at 78-79.

[14] Docket 71-2 at 84-85.

[15] Docket 71-2 at 86-87.

[16] Docket 71-2 at 89.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 3 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 3 of 38

Stop.'"[17]  When she again tried to push him away with her right hand, her hand hit something "on his person" that she believed was a gun.[18]  During this assault, Mr. Heitstuman also grabbed Ms. Lauria's right breast.[19]

After this September 12th assault, Mr. Heitstuman began a texting exchange with Ms. Lauria.[20]  They exchanged about 800 texts, from approximately September 13 to September 17, 2017, many of which were sexually explicit in nature.[21]  According to Ms. Lauria, even though she was "in fear for [her] life" after the September 12th attack, she engaged in the text exchanges with Mr. Heitstuman because that was "what [she] knew to protect [her]self" and because she "thought he would just get bored and just move on."[22]  However, Ms. Lauria did not request Mr. Heitstuman to stop contacting her, and she acknowledged that the text exchanges could "give[] the impression that there[ was] a personal relationship developing."[23]

---

[17] Docket 71-2 at 89-90.

[18] Docket 71-2 at 90, 92, 235.

[19] Docket 71-2 at 93-94.

[20] Docket 71-2 at 109-10, 121, 127 (Ms. Lauria testifying that she "never text messaged [Mr. Heitstuman] first").

[21] *See generally* Docket 71-4.

[22] Docket 71-2 at 127-28.  Ms. Lauria also testified that she felt like she had to respond when Mr. Heitstuman texted her, because "no response was a dangerous response."  Docket 71-2 at 233.

[23] Docket 71-2 at 129-30.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 4 of 38

Several of the text exchanges could be read to indicate encouragement from Ms. Lauria for further sexual encounters with Mr. Heitstuman.[24]

On September 19, 2017, Mr. Heitstuman returned to the museum in his Homeland Security uniform.[25] Museum security officers allowed him into the building and notified Ms. Lauria that "the police are here," but she did not know that it was Mr. Heitstuman until she saw him in the atrium.[26] Ms. Lauria testified that she was alarmed when she saw him, but allowed him into her office where he "immediate[ly]" "grabbed [her] arm," "spun [her] around," and again "bent [her] over."[27] At that point, Ms. Lauria's "pants were removed," and Mr. Heitstuman "raped [her]."[28] After the assault, Mr. Heitstuman began talking about "the hierarchy of law enforcement and security" and indicated that his position as a Homeland Security officer was much higher than Ms. Lauria's position as a security officer.[29] Mr. Heitstuman told Ms. Lauria that she could "[g]o ahead" and "[t]ell [his] supervisor," but that even if she told anyone about the incident, "no one will ever believe [her]."[30]

---

[24] *See* Docket 71-4 at 13-16.

[25] Docket 71-2 at 162-63, 235.

[26] Docket 71-2 at 163.

[27] Docket 71-2 at 163-65, 167, 169, 236.

[28] Docket 71-2 at 170-71.

[29] Docket 71-2 at 98-100, 180-81, 237 (Ms. Lauria clarified that Mr. Heitstuman made these statements after the September 19th incident, not the September 12th incident).

[30] Docket 71-2 at 99, 181-82.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 5 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 5 of 38

After the September 19th assault, Mr. Heitstuman continued to communicate with Ms. Lauria through November 2017.[31]  Mr. Heitstuman twice texted Ms. Lauria that he was outside of her workplace, and once texted her that he saw her outside her workplace while he was "directing traffic" nearby.[32]  Ms. Lauria eventually contacted the police and obtained a protective order against Mr. Heitstuman that was issued on December 1, 2017.[33]  On February 25, 2021, Mr. Heitstuman was indicted on seven counts of sexual assault involving incidents with three other women that occurred between 2012 and 2018, including one woman referred to as A.F.[34]  Mr. Heitstuman has not been indicted for the alleged assaults involving Ms. Lauria.

As relevant here, Ms. Lauria brings several claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*.[35]  Ms. Lauria alleges that Mr. Heitstuman committed various intentional torts while acting within the scope of his employment as a federal law enforcement officer; that the United States negligently

---

[31] Docket 71-2 at 192.  Ms. Lauria testified that she had deleted the 800 or so texts with Mr. Heitstuman sometime after September 19 but before late November 2017.  Docket 71-2 at 111, 116-17.  Also during that time, she dropped and broke her phone, so she acquired a new phone; she did not delete messages with Mr. Heitstuman after she acquired the new phone.  Docket 71-2 at 116-17.

[32] Docket 71-12 at 7; Docket 71-9 at 1, 3, 7; Docket 71-2 at 203-04.  On September 12, Mr. Heitstuman also told Ms. Lauria that they "lived on the same side of town."  Docket 71-2 at 198-99; Docket 71-12 at 7.  According to Ms. Lauria, she believes he said this because he saw a picture of Ms. Lauria's daughter in her office, and her daughter had a school uniform on that he recognized.  Docket 71-2 at 200.

[33] Docket 71-5; Docket 71-12 at 1-3.

[34] Docket 25-1.

[35] Docket 25 at ¶ 2.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 6 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 6 of 38

hired, trained, and supervised Mr. Heitstuman; and that the United States negligently inflicted emotional distress on Ms. Lauria.[36]

## JURISDICTION

The Court has jurisdiction over Ms. Lauria's federal claims pursuant to 28 U.S.C. § 1331. The Court also exercises its supplemental jurisdiction over Ms. Lauria's state law claims pursuant to 28 U.S.C. § 1367.

## LEGAL STANDARD

The Court first addresses the United States' motion to partially exclude the expert opinion of Judy Gette and then addresses the United States' motion for summary judgment.

### I. Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[36] Docket 25 at ¶¶ 21-53. Plaintiff also pleaded an aided-in-agency cause of action. Docket 25 at ¶¶ 54-56. However, Plaintiff expressly abandoned this claim in a previous brief. Docket 18 at 1 ("Plaintiff concedes that the Thirteenth Cause of Action for Aided in Agency should be dismissed.").

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 7 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 7 of 38

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under the standard set forth by *Daubert*, a "court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."[37] "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand,'" though the "test of reliability is 'flexible' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case."[38] Thus, the "test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology," and "the district judge is 'a gatekeeper, not a fact finder.'"[39] However, at a bench trial "where the potential for prejudice or confusion is reduced," "the *Daubert* gatekeeping obligation is less pressing."[40] And "[w]here an expert offers non-scientific testimony, 'reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind' the

---

[37] *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-94, 596 (1993)).

[38] *Id.* (first quoting *Daubert*, 509 U.S. at 597; and then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

[39] *Id.* at 564-65 (citations omitted).

[40] *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1247 (9th Cir. 2021) (Miller, J., concurring) (quoting *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999)).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 8 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 8 of 38

testimony."[41]  Moreover, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."[42]

## II.    Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[43]  If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[44]  When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[45]

## DISCUSSION

## I.    Motion to Partially Exclude Expert Testimony

Judy Gette, one of Ms. Lauria's experts, prepared a report for this case on the

---

[41] *Porter v. Martinez*, 68 F.4th 429, 444 (9th Cir. 2023) (emphasis in original) (citations omitted), *cert. denied*, No. 23-423, 2024 WL 759806 (U.S. Feb. 26, 2024)

[42] *Id.* at 445 (quoting *Kumho Tire*, 526 U.S. at 152).

[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[44] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[45] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 9 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 9 of 38

incidents between Ms. Lauria and Mr. Heitstuman.[46] Ms. Gette holds a Master of Science in Counseling Psychology from the University of Alaska, Anchorage, and a Bachelor of Science in Psychology from the University of North Dakota, Grand Forks.[47] She has extensive work history, teaching experience, and training in psychology and domestic violence, among other related topics.[48] She has previously been qualified as an expert witness in the area of domestic violence and interpersonal violence, and she has testified in multiple state court cases.[49]

The United States moves to exclude Ms. Gette's testimony on three of the four topics addressed in her report: (1) the power dynamic between Ms. Lauria and Mr. Heitstuman at the time of the alleged assaults; (2) an explanation of the nearly 800 text messages exchanged between the two after the first assault and whether they could be construed as consent for the second assault; and (3) the influence that Ms. Lauria's past trauma had on her responses to subsequent trauma.[50] The United States does not oppose testimony on the fourth topic addressed in Ms. Gette's report, which generally discusses the long-term impacts of trauma such as sexual assault.[51] The United States contends that Ms. Gette's opinions on the first three topics are not

---

[46] Docket 72-1 (Gette Report).

[47] Docket 72-5 at 1.

[48] Docket 72-5 at 1-6.

[49] Docket 72-5 at 2, 6-7.

[50] Docket 72 at 1-2; Docket 72-1 at 1-4.

[51] Docket 72 at 2; Docket 72-1 at 4.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 10 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 10 of 38

based on sufficient facts or data and that her opinions do not reflect a reliable application of the principles and methods to the facts of this case.[52]  The United States thus asserts that her opinions are not helpful to the trier of fact.[53]  The Court examines the first three topics in turn.

### a. Power Dynamic Between Ms. Lauria and Mr. Heitstuman

In her report, Ms. Gette indicates an imbalanced power dynamic between Ms. Lauria and Mr. Heitstuman due to Mr. Heitstuman being "a male in a culture where males continue to enjoy greater privilege than females," his large size, official authority, and statements made to Ms. Lauria "verbaliz[ing] their differences in status/power."[54]

The United States asserts that Ms. Gette "did not review most of the collateral materials provided to her by Plaintiff's counsel" and did not review law enforcement materials, even though she was aware of the law enforcement investigation into Ms. Lauria's allegations.[55]  Instead, the United States asserts that she relied only on "Plaintiff's deposition recording, the third amended complaint and corresponding answers, and a copy of the text messages between Plaintiff and Heitstuman

---

[52] Docket 72 at 2 (quoting Fed. R. Evid. 702(b), (d)).

[53] Docket 72 at 2 (quoting Fed. R. Evid. 702(a)).

[54] Docket 72-1 at 1.

[55] Docket 72 at 7-8.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 11 of 38

recovered by the FBI."[56]  In addition, the United States contends that Ms. Gette "admitted she did not utilize any of [the assessment] tools in the present case" that she normally would when offering an expert opinion.[57]

Ms. Lauria responds that the United States "fails to explain what light these additional materials could possibly shed on the power differential between these two individuals."[58]  Ms. Lauria contends that "nothing in those materials . . . would illuminate the power dynamic and its impact on a victim of sexual assault."[59]  She therefore asserts that Ms. Gette should be allowed to testify on the power dynamics in the instant scenario based on her training and professional experience.[60]

The Court agrees with the United States that Ms. Lauria has not met her burden of proving admissibility here.[61]  Ms. Gette's expert report on the power dynamics of the situation presents conclusions based on minimal analysis that are, frankly, conclusory.[62]  The Court agrees that the opinion is not based on sufficient facts or data pursuant to Rule 702, not only because Ms. Gette failed to review a substantial amount of the relevant material in the case, but also because she came to

---

[56] Docket 72 at 7 (citing Docket 72-4 at 12-13 (Gette Dep.)).

[57] Docket 72 at 8 (citing Docket 72-4 at 46-51).

[58] Docket 77 at 6.

[59] Docket 77 at 6.

[60] Docket 77 at 6.

[61] *See Lust ex rel. Lust v. Merrell Dow Pharms.,* 89 F.3d 594, 598 (9th Cir. 1996); *Daubert*, 509 U.S. at 592 n.10.

[62] *See* Docket 72-1 at 1.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 12 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 12 of 38

conclusions based on speculation and without the use of any assessment tools she usually relies on when formulating an expert opinion.[63] Ms. Lauria fails to establish that Ms. Gette has sufficient knowledge about both Ms. Lauria and Mr. Heitstuman that would make her a reliable expert on the power dynamics between those two individuals. Accordingly, the Court finds that Ms. Gette's proposed testimony on the power dynamics between Ms. Lauria and Mr. Heitstuman is not reliable. However, the Court finds that Ms. Gette can testify generally on power dynamics, which is a topic related to psychology and domestic violence, based upon her training and experience.[64] Therefore, Ms. Gette will be allowed to testify generally about power dynamics but will not apply that general testimony to the facts of this case.

### b. Text Messages After First Assault

The United States makes a similar argument regarding Ms. Gette's review of and conclusions about the approximately 800 text messages exchanged between Ms. Lauria and Mr. Heitstuman after the first alleged assault.[65] In her report, Ms. Gette concludes that Ms. Lauria engaged in the text exchanges with Mr. Heitstuman

---

[63] In her report on the power dynamic, Ms. Gette wrote that Mr. Heitstuman "is larger than Ms. Lauria and can use his physical power to overcome her and prevent resistance." Docket 72-1 at 1. However, when questioned how she knew Mr. Heitstuman was larger than Ms. Lauria, Ms. Gette answered that "[i]t was an assumption" and that there was "a statistical chance that . . . he was very likely larger than her." *See* Docket 72-4 at 95-97.

[64] *See* Docket 72-5 at 1-6; *cf. United States v. Lopez-Martinez*, 543 F.3d 509, 514-15 (9th Cir. 2008) (holding that, in a case where a border patrol agent with 14 years of experience testified as an expert about patterns and methods common among smugglers, experience and training can provide a reliable basis for an expert opinion).

[65] Docket 72 at 10-13.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 13 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 13 of 38

because "she was trying to reduce the chance of another attack" and "attempting to control some of the narrative."[66] The United States contends that Ms. Gette's opinion is not based on sufficient facts or data, and that she did not reliably apply principles and methods to the facts of the case.[67] As an example, the United States asserts that Ms. Gette's opinion that Mr. Heitstuman has "a belief system that women were inherently less valuable than himself and that he could act without fear of consequence" came not from a review of the materials, but from "a conversation held with Plaintiff's counsel."[68]

Ms. Lauria maintains that Ms. Gette's testimony on this topic is needed to "provide a framework for understanding why a victim of sexual assault would communicate frequently and in a sexual manner via text with a perpetrator."[69] Ms. Lauria contends that this testimony will expand "on the common but often misunderstood victim response called 'fawning' or 'appeasement,'" "an area that [Ms. Gette] has researched and taught."[70]

The Court agrees with the United States that Ms. Gette did not base her opinions with respect to Ms. Lauria and Mr. Heitstuman's text exchanges on sufficient

---

[66] Docket 72-1 at 2-3.

[67] Docket 72 at 10-11.

[68] Docket 72 at 11 (first citing Docket 72-1 at 3; and then citing Docket 72-4 at 107-08).

[69] Docket 77 at 7.

[70] Docket 77 at 7.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 14 of 38

facts or data because she failed to consider other relevant material in the case. However, the Court, with the "considerable leeway" it has in "determining whether particular expert testimony is reliable," will not preclude Ms. Gette's general testimony on the victim response known as "fawning" or "appeasement."[71] In this part of her report, Ms. Gette cites to and discusses numerous studies on the subject, which the Court takes as indicia of reliability as to her "knowledge and experience" on this topic.[72] Accordingly, Ms. Gette will be allowed to testify generally about "fawning" or "appeasement" victim responses but not apply that general testimony to the facts of this case.

### c. Influence of Past Trauma on Response to Subsequent Trauma

Finally, the United States contends that Ms. Gette's testimony on Ms. Lauria's response to trauma due to her history of trauma should be excluded.[73] Ms. Lauria testified that she experienced a previous, non-penetrative sexual assault in the early 2000s, and that she was previously physically assaulted by an ex-husband, which resulted in a shattered coccyx.[74] In her report, Ms. Gette notes that, during the assaults by Mr. Heitstuman, Ms. Lauria went "into [a] freeze response" and

---

[71] *See Porter*, 68 F.4th at 445 (quoting *Kumho Tire*, 526 U.S. at 152).

[72] *See* Docket 72-1 at 1-3; *Porter*, 68 F.4th at 444 (emphasis omitted) (citation omitted).

[73] Docket 72 at 13-14; *see also* Docket 72-1 at 3-4.

[74] Docket 71-2 at 217-19, 229-30.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 15 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 15 of 38

experienced a form of dissociation.[75]   And based on Ms. Lauria's previous trauma, Ms. Gette concluded that Ms. Lauria believes "law enforcement will not protect her" and "knows she will be challenged about the credibility of her report."[76]

The United States points out that Ms. Gette is not a licensed counselor, clinical or medical provider, or scientist.[77]   The United States contends that, because Ms. Gette "did not review Plaintiff's relevant therapy records and is not qualified to render clinical diagnoses, she cannot offer this opinion under Rule 702."[78]   Ms. Lauria briefly responds that Ms. Gette will be able to provide an explanation for how the brain processes current and prior trauma.[79]

The Court agrees with the United States that Ms. Gette's opinion as to Ms. Lauria does not meet the requirements of Rule 702, especially since she is not qualified to render a mental health diagnosis.   However, the Court finds that, based upon Ms. Gette's training and experience, she may provide general testimony on how past trauma plays a role in subsequent trauma, which is a topic related to psychology and domestic violence.[80]   Accordingly, Ms. Gette will be allowed to testify generally about the influence of past trauma but will not apply that general testimony to the

---

[75] Docket 72-1 at 3-4.

[76] Docket 72-1 at 4.

[77] Docket 72 at 13 (citing Docket 72-4 at 20-21, 155).

[78] Docket 72 at 14.

[79] Docket 77 at 7.

[80] See Docket 72-5 at 1-6; Lopez-Martinez, 543 F.3d at 514-15.

Case No. 3:20-cv-00210-SLG, Lauria v. USA, et al.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 16 of 38

facts of this case.

In summary, Ms. Gette will be allowed to testify generally on power dynamics, the victim response known as "fawning" or "appeasement," how past trauma may influence responses to subsequent trauma, and on the long-term impacts of trauma such as sexual assault. Her testimony is otherwise precluded, and she shall not testify regarding the specific facts of this case.

## II.    Motion for Summary Judgment

The United States moves for summary judgment on three grounds: (1) that Ms. Lauria failed to show that Mr. Heitstuman was acting within the scope of his office or employment for Counts 2, 4, 6, 8, and 10; (2) that the discretionary function exception to the FTCA bars Count 11; and (3) that Ms. Lauria's negligent infliction of emotional distress claim "arises out of the injuries set forth in the other Counts, so Count 12 must either merge with those Counts or be dismissed for the same reasons."[81]  The Court addresses each of the United States' arguments in turn.

### a.  Scope of Employment

The United States contends that it is entitled to summary judgment on Counts 2, 4, 6, 8, and 10 of Ms. Lauria's Third Amended Complaint because Mr. Heitstuman "was acting outside the scope of his employment when he interacted with Plaintiff in Fall 2017."[82]  Counts 2, 4, 6, 8, and 10 consist of assault and battery, harassment,

---

[81] Docket 71 at 2.

[82] Docket 71 at 18.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 17 of 38

and stalking claims against the United States, which Ms. Lauria asserts is liable for Mr. Heitstuman's actions because he was acting in his official capacity or within the scope of his employment as a DHS agent at the time.[83]  Because the United States moves for summary judgment, the Court views the facts in the light most favorable to Ms. Lauria and draws all justifiable inferences in her favor.[84]

### 1.  Counts 2, 4, and 6 – Assault and Battery[85]

Count 2 alleges assault and battery by Mr. Heitstuman "pushing [Ms. Lauria] over a chair and grabbing her breasts" on September 12, 2017.[86]  Count 4 alleges assault and battery by Mr. Heitstuman "pressing his groin into Plaintiff's groin area without consent" on September 12, 2017.[87]  And Count 6 alleges assault and battery for Mr. Heitstuman "rap[ing]" Ms. Lauria on September 19, 2017.[88]  For each of these counts, Ms. Lauria alleges that Mr. Heitstuman "was on duty, in uniform, and acting in his official capacity or within the scope of his employment" when he perpetrated the assaults.[89]

---

[83] *See* Docket 25 at 6-10 (3d Am. Compl.).

[84] *See Anderson*, 477 U.S. at 255 (citation omitted).

[85] For these counts, Ms. Lauria cites to the Alaska criminal code, but the FTCA applies to torts. *See* Docket 25 at ¶¶ 24, 29, 34.  However, assault and battery are torts under Alaska law.  *See* Alaska Court System, Civil Pattern Jury Instructions, https://courts.alaska.gov/CVPJI/index.htm (last visited May 13, 2024).

[86] Docket 25 at ¶ 24.

[87] Docket 25 at ¶ 29.

[88] Docket 25 at ¶ 34.

[89] Docket 25 at ¶¶ 25, 30, 35.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 18 of 38

The FTCA only applies to claims based on the conduct of a federal employee "acting within the scope of his office or employment."[90]  "FTCA scope of employment determinations are made 'according to the principles of *respondeat superior* of the state in which the alleged tort occurred.'"[91]  Here, the alleged torts occurred in Alaska. In determining whether an employee was acting within his scope of employment, Alaska courts apply a "flexible, multi-factored test."[92]  Under this test, "an employee acts within the scope of employment if the employee (1) performs the kind of work the employee was hired to perform, (2) acts within the employer's authorized time and space limits, and (3) acts in order to further the employer's interests."[93]  With respect to the third factor, the Alaska Supreme Court has held that "where tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the 'motivation to serve' test will have been satisfied."[94]  The Alaska Supreme Court further held that, to meet the "motivation to serve" test, the employee's act must "be motivated in fact at least to some degree to serve the master's business."[95]  The Alaska test is derived from Section 228 of the Restatement

---

[90] 28 U.S.C. § 1346(b)(1).

[91] *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (quoting *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992)).

[92] *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344, 346 (Alaska 1990).

[93] *Lane v. City of Juneau*, 421 P.3d 83, 95 (Alaska 2018) (internal quotation marks omitted).

[94] *Samaritan Counseling Ctr.*, 791 P.2d at 348.

[95] *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 924 (Alaska 1999) (citing *Samaritan Counseling Ctr.*, 791 P.2d at 348).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 19 of 38

(Second) of Agency.[96]  However, the Alaska Supreme Court has held that Restatement factors "are relevant considerations, but are not determinative of the *respondeat superior* analysis."[97]  Rather, the factors are "guidelines which are useful in making . . . the determination as to when an employee's tort will be attributed to the employer."[98]

Earlier in this litigation, the United States filed a motion to dismiss and set forth the same argument—that "Mr. Heitstuman's conduct [could not] fall within the scope of his employment as a matter of law."[99]  The Court, however, held that Ms. Lauria "plausibly allege[d] that Mr. Heitstuman was acting within the scope of his employment when he was investigating a disturbance near the federal building in downtown Anchorage."[100]  In reaching that conclusion, the Court relied on the Alaska

---

[96] Section 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master, and
>>
>> (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[97] *Samaritan Counseling Ctr.*, 791 P.2d at 347.

[98] *Id.* (quoting *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 349 (Alaska 1982)).

[99] *See Lauria v. United States*, 542 F. Supp. 3d 926, 935 (D. Alaska 2021); Docket 71 at 33-34.

[100] *Lauria*, 542 F. Supp. 3d at 937.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 20 of 38

Supreme Court's decision in *Lane v. City of Juneau*, where a campground caretaker, whose job duties "arguably required him to socialize with other campground residents," became heavily intoxicated with several campers and passed around two firearms.[101]  After a dispute, another camper shot the plaintiff camper with one of the caretaker's firearms.[102]  The trial court granted summary judgment to the municipality, but the Alaska Supreme Court reversed, holding that "we cannot . . . conclude as a matter of law that [the caretaker's] conduct was not 'reasonably incidental' to his employment."[103]   The *Lane* court held that "[t]he scope of employment is a fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion."[104]  It further observed that, based on the facts before it, "[o]ne could argue that [the caretaker] was doing his job but doing it poorly."[105]

Thus, in deciding the previous motion to dismiss, this Court noted that Ms. Lauria alleged "Mr. Heitstuman was in uniform, drove a Homeland Security vehicle, and, at least implicitly, represented that he had the authority to investigate the museum incident."[106]  The Court also noted that federal law empowers DHS agents to "enforce Federal laws and regulations for the protection of persons and property"

---

[101] *Id.* at 938; *Lane*, 421 P.3d at 86-87, 94.

[102] *Lane*, 421 P.3d at 87.

[103] *Id.* at 87, 95.

[104] *Id.* at 96 (citation omitted).

[105] *Id.*

[106] *Lauria*, 542 F. Supp. 3d at 937.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 21 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 21 of 38

and "conduct investigations, *on and off the property in question*, of offenses that *may* have been committed against property owned or occupied by the Federal Government or persons on the property."[107]  The Court held that, "[b]ased on this language, and given the museum's proximity to the federal building in downtown Anchorage, it cannot be conclusively said that Mr. Heitstuman wholly lacked authority to conduct an investigation of a disturbance at the museum," a disturbance which included a bomb threat.[108]  Accordingly, the Court held that it could not "conclude as a matter of law that [Mr. Heitstuman's] conduct was not 'reasonably incidental' to his employment."[109]

While this Court's previous ruling concerned a motion to dismiss, the Court finds that the same analysis and conclusions apply to the instant motion for summary judgment on Counts 2, 4, and 6 because the facts then alleged by Ms. Lauria have not changed.  Discovery has closed, and the evidence regarding the alleged assaults—as discussed in the Background section *supra*—has remained consistent.[110]  While the United States relies heavily on Sections 228 and 229 of the Restatement (Second) of Agency in its briefing,[111] under Alaska law, the Restatement

---

[107] *Id.* (quoting 40 U.S.C. § 1315(b)(2)(A), (E) (emphasis added)).

[108] *Id.* at 937 & n.73.

[109] *Id.* at 938 (alteration in original) (citation omitted).

[110] *See* Docket 64 (order directing that discovery would close on November 15, 2023).

[111] *See* Docket 71 at 19-29.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 22 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 22 of 38

factors "are relevant considerations, but are not determinative of the *respondeat superior* analysis."[112]  Because the factors are "guidelines which are useful in making . . . the determination as to when an employee's tort will be attributed to the employer,"[113] the United States' reliance on these factors simply highlights the factual nature of a scope of employment inquiry.[114]  Moreover, the Court agrees with Ms. Lauria that "*Lane* is still the most instructive [Alaska] precedent" on the scope of employment issue.[115]  The United States has not cited to—and the Court is unaware of—any intervening changes in the law that would persuade the Court to alter its previous holding.  Accordingly, the Court finds that a genuine dispute of a material fact exists as to whether Mr. Heitstuman was acting within the scope of his employment during the September 12 and 19 assaults alleged by Ms. Lauria.  Summary judgment is thus denied to the United States on Counts 2, 4, and 6.

### 2.  Count 8 – Harassment

Count 8 alleges that, on unspecified dates, Mr. Heitstuman "repeatedly intended to and did harass [P]laintiff" by "[making] contact with Plaintiff in an obscene manner and that threatened sexual contact in violation of Alaska Statute 11.61.120(a)," while "he was on duty, in uniform, and acting in his official capacity or

---

[112] *Samaritan Counseling Ctr.*, 791 P.2d at 347.

[113] *Id.* (quoting *Williams*, 650 P.2d at 349).

[114] *See Lane*, 421 P.3d at 96 ("[T]he scope of employment is a fact specific inquiry for the [factfinder] unless the facts are undisputed or lend themselves to only one conclusion.").

[115] *See* Docket 80 at 23-24.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 23 of 38

within the scope of his employment."[116] The United States lists the seven subsections that can constitute harassment under Alaska Statute ("AS") 11.61.120(a) but contends that Ms. Lauria "does not specify which of the seven subsections of the statute apply."[117] Of relevance, AS 11.61.120 provides:

> (a) A person commits the crime of harassment in the second degree if, with intent to harass or annoy another person, that person
>
> . . .
>
>> (4) makes an anonymous or obscene telephone call, an obscene electronic communication, or a telephone call or electronic communication that threatens physical injury or sexual contact; [or]
>>
>> (5) subjects another person to offensive physical contact[.]

Thus, from the language in Count 8, it is clear that Ms. Lauria is bringing her harassment claim pursuant to AS 11.61.120(a)(4).

However, the United States references section (a)(5) of the statute and asserts that, "[t]o the extent Plaintiff is asserting that Heitstuman subjected Plaintiff to 'offensive physical contact,' the only times Plaintiff interacted with Heitstuman physically was on September 12 and 19."[118] Based on that theory, the United States maintains that "Plaintiff cannot double recover damages for a single injury"—that is, "Plaintiff cannot claim harassment *and* assault for the events of September 12" or "for

---

[116] Docket 25 at ¶¶ 40-41.

[117] Docket 71 at 32.

[118] Docket 71 at 32.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 24 of 38

the events of September 19."[119]  The United States therefore asserts that it is entitled to summary judgment on Count 8.[120]

However, Ms. Lauria did not allege "offensive physical contact" pursuant to section (a)(5); she alleged that Mr. Heitstuman "made contact with Plaintiff in an obscene manner and that threatened sexual contact," tracking the language of section (a)(4).[121]  She notes in her response to the United States' motion that Mr. Heitstuman "repeatedly texted her while on duty and demanded that she engage with him in a sexual manner, including demanding that she send explicit videos and photos."[122]  The United States does not explain why it is entitled to summary judgment based on a harassment claim brought pursuant to AS 11.61.120(a)(4).[123]  Accordingly, the Court finds that the United States has not met its burden of showing

---

[119] Docket 71 at 33.

[120] Docket 71 at 33.

[121] Docket 25 at ¶ 40.

[122] Docket 80 at 25-26 (citing Docket 71-12 at 7 (Pet. for Stalking or Sexual Assault Protective Order)).  In Ms. Lauria's response, she asserts that "[t]he evidence demonstrates that in the course of his official duties Heitstuman subjected Plaintiff to insults and taunts with the intent to harass her."  Docket 80 at 25.  But that claim implicates section (a)(1), which criminalizes when a person "insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response."  AS 11.61.120(a)(1).  However, because the language in the Third Amended Complaint clearly indicates a harassment claim only under section (a)(4), the Court considers that claim rather than any different claim asserted in Ms. Lauria's response to the United States' motion for summary judgment.

[123] *See* Docket 71 at 31-33 (arguing only that Ms. Lauria cannot claim both harassment and assault for the events of September 12 and 19); Docket 82 at 8 (replying only as to Ms. Lauria's argument that Mr. Heitstuman insulted and taunted her).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 25 of 38

the absence of a genuine dispute of material fact as to this claim and denies summary judgment on Count 8.[124]

### 3. Count 10 – Stalking

Count 10 alleges, on unspecified dates, a claim for stalking because Mr. Heitstuman "knowingly engaged in a course of conduct that placed Plaintiff in fear of physical injury in violation of Alaska Statute 11.41.260(a)(4)" while "he was at work or performing official work duties within the scope of his employment."[125] AS 11.41.260(a)(4) provides that a person commits the crime of stalking in the first degree if the person violates AS 11.41.270 and "at any time during the course of conduct constituting the offense, the defendant possessed a deadly weapon." AS 11.41.270(a) provides that a person commits the crime of stalking in the second degree "if the person knowingly engages in a course of conduct that recklessly places another person in fear of death or physical injury."

The United States asserts that Ms. Lauria has not established that Mr. Heitstuman was acting in the scope of his employment when he contacted her after

---

[124] Ms. Lauria also cites to the Alaska criminal code in bringing her harassment claim under the FTCA. *See* Docket 25 at ¶ 40. The United States does not discuss whether Ms. Lauria is able to bring a harassment tort claim under Alaska law; nor does the United States request summary judgment on that basis. *See generally* Docket 71; Docket 82. The Court notes that civil claims for harassment in Alaska appear to involve an employer's liability for sexual harassment. *See* Alaska Court System, Civil Pattern Jury Instructions, https://courts.alaska.gov/CVPJI/index.htm (last visited May 13, 2024). The Court further notes that AS 11.61.120 does not appear to support a private cause of action. *See DeRemer v. Turnbull*, 453 P.3d 193, 198-99 (Alaska 2019) (holding that statute that criminalized interference with another's constitutional rights could not be construed as supporting private cause of action).

[125] Docket 25 at ¶¶ 46-47.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 26 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 26 of 38

the alleged assaults.[126]   The United States also contends that Ms. Lauria cannot establish that Mr. Heitstuman acted "knowingly" as required by the statute, because she "neither asked Heitstuman not to contact her after September 19 until seeking a restraining order nor indicated so in the messages the FBI recovered."[127]   And the United States maintains that Ms. Lauria has not established that Mr. Heitstuman was carrying a deadly weapon when he contacted her.[128]

However, the burden lies with the United States to prove that there is no genuine factual dispute as to these matters.  Ms. Lauria has provided evidence that, on at least one occasion when Mr. Heitstuman contacted her through text messaging, he was "directing traffic because of an auto accident on the corner of 6th and A Street" and "saw [her] outside of [her] work."[129]  She has also alleged that "Mr. Heitstuman began texting [her] and telling [her] to talk dirty to him over text message on a daily basis while he was at work," and that she "was terrified as to what he might do if [she] did not comply with his demands, so [she] did."[130]  While the United States asserts that it relies on its previous arguments that Mr. Heitstuman was not acting within the scope of his employment, the Court has rejected those arguments and similarly does

---

[126] Docket 71 at 34.

[127] Docket 71 at 34 (first citing Docket 71-9; and then citing Docket 71-4).

[128] Docket 82 at 8-9.

[129] Docket 71-12 at 7.

[130] Docket 71-12 at 7.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 27 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 27 of 38

so here.[131]  Ms. Lauria has provided some evidence that Mr. Heitstuman was on duty when he contacted her, and the scope of employment determination is a fact specific inquiry.[132]

In addition, although the United States contends that Ms. Lauria has not shown that Mr. Heitstuman had a deadly weapon when he contacted her after the alleged assaults, the Court finds that a genuine factual dispute remains on this topic.[133]  Not only did Ms. Lauria testify that she felt what she thought was a gun when she "shove[d]" Mr. Heitstuman away on September 12 when he was in uniform, but a photo of Mr. Heitstuman in uniform taken by museum director Ms. Decker on the same day shows what appears to be a gun on Mr. Heitstuman's right hip.[134]  A reasonable inference may be drawn that Mr. Heitstuman is regularly armed while on duty.  Accordingly, the Court denies summary judgment on Count 10.[135]

---

[131] Docket 82 at 9 (citing Docket 71).

[132] *See Lane*, 421 P.3d at 96.

[133] *See* Docket 82 at 8-9.

[134] *See* Docket 71-2 at 43, 92, 235; Docket 80 at 10; Docket 80-12 at 11 (Ms. Decker testifying that she took a photo of Mr. Heitstuman in the museum's security booth and that Mr. Heitstuman "was, at the time, suggesting he was overseeing the law enforcement response . . . [at the] loading dock").

[135] Ms. Lauria again cites to the Alaska criminal code in bringing her stalking claim under the FTCA. *See* Docket 25 at ¶ 40.  The United States does not discuss whether Ms. Lauria is able to bring a stalking tort claim under Alaska law; nor does the United States request summary judgment on that basis.  *See generally* Docket 71; Docket 82.  The Court further notes that AS 11.41.270 does not appear to support a private cause of action.  *See DeRemer*, 453 P.3d at 198-99 (holding that statute that criminalized interference with another's constitutional rights could not be construed as supporting private cause of action); Alaska Court System, Civil Pattern Jury Instructions, https://courts.alaska.gov/CVPJI/index.htm (last visited May 13, 2024).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 28 of 38

### b. Discretionary Function Exception

The Court next addresses the United States' argument that the discretionary function exception to the FTCA bars Count 11, which alleges that "[t]he United States failed to exercise due care in hiring, training, and supervising Agent Heitstuman and Plaintiff suffered harm as a result."[136]  "The FTCA's discretionary function exception preserves sovereign immunity as to claims regarding a government employee's 'act or omission . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency' or government employee."[137]  "The Supreme Court has crafted a two-step test to determine whether the discretionary function exception applies," but before applying the test, a court "must identify which specific actions or omissions the plaintiff alleges were negligent or wrongful."[138]  Under the two-step test, "[c]ourts must determine whether (1) the challenged actions involve an element of judgment or choice and, if so, whether (2) the judgment is of the kind that the discretionary function exception was designed to shield."[139]

> At the first step, [courts] must "determine whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with

---

[136] Docket 71 at 34-37; Docket 25 at ¶ 51.

[137] *Schurg v. United States*, 63 F.4th 826, 831 (9th Cir. 2023) (citation omitted), *cert. denied sub nom. O'Grady v. United States*, 144 S. Ct. 379 (2023); *see also* 28 U.S.C. § 2680(a).

[138] *Schurg*, 63 F.4th at 831 (internal quotation marks and citation omitted); *Nanouk v. United States*, 974 F.3d 941, 945 (9th Cir. 2020) (citation omitted).

[139] *Schurg*, 63 F.4th at 831 (internal quotation marks and citation omitted).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 29 of 38

respect to carrying out the challenged action." We focus on the "nature of the conduct, rather than the status of the actor," and a government employee's action is nondiscretionary where it is specifically prescribed by "a federal statute, regulation, or policy." If there is an "element of judgment or choice," we proceed to the second step and ask whether the government actor's action or inaction was "based on considerations of public policy," which are "the kind that the discretionary function exception was designed to shield."[140]

If the challenged action satisfies both steps, then the government is immune from the suit, "even if the court thinks the government abused its discretion."[141] "The plaintiff has the burden of showing there are genuine issues of material fact as to whether the exception should apply, but the government bears the ultimate burden of establishing that the exception applies."[142]

Preliminarily, the Court identifies "which specific actions or omissions the plaintiff alleges were negligent or wrongful."[143] Here, Ms. Lauria alleges that "[t]he United States failed to exercise due care in hiring, training, and supervising Agent Heitstuman," and that the "United States knew that Heitstuman had a documented history of sexual misconduct while on duty before he assaulted Ms. Lauria."[144]

The United States asserts that "the Ninth Circuit has consistently held that the discretionary function exception applies" when "faced with negligent training or

---

[140] *Id.* (citations omitted).

[141] *Id.* (citation omitted).

[142] *Esquivel v. United States*, 21 F.4th 565, 574 (9th Cir. 2021) (citation omitted).

[143] *Nanouk*, 974 F.3d at 945 (citation omitted).

[144] Docket 25 at ¶¶ 50-51.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 30 of 38

supervision claims."[145]   The Court agrees; indeed, the Ninth Circuit has held that "negligent and reckless employment, supervision and training . . . fall squarely within the discretionary function exception."[146]   Thus, it becomes Ms. Lauria's burden "to identify a '*federal* statute, regulation, or policy' that constrained the [United States'] substantive discretion in a way that precludes applying the discretionary function exception here."[147]   Ms. Lauria identifies one federal regulation and one federal policy that she asserts the United States was required to follow in this situation: the part of the Federal Protective Service's ("FPS") Law Enforcement Authority and Jurisdiction Field Guide that is codified at 41 C.F.R. § 102-74.15(b); and DHS's Ethics/Standards of Conduct directive.[148]   The Court examines each under the two-step test.[149]

### 1.  41 C.F.R. § 102-74.15(b)

41 C.F.R. § 102-74.15(b) provides: "Occupants of facilities under the custody and control of Federal agencies must . . . [p]romptly report all crimes and suspicious circumstances occurring on Federally controlled property first to the regional Federal Protective Service, and as appropriate, the local responding law enforcement

---

[145] Docket 71 at 35.

[146] *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citations omitted).

[147] *See Miller v. United States*, 992 F.3d 878, 886 (9th Cir. 2021) (emphasis in original) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (other citation omitted).

[148] Docket 80 at 27-29.

[149] *See Miller*, 992 F.3d at 886-89 (applying two-step test to federal regulations identified by plaintiff, but holding that the identified regulations did not "constrain the . . . substantive discretion in a way that precludes applying the discretionary function exception").

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 31 of 38

authority." FPS is a federal law enforcement agency within DHS.[150] Ms. Lauria asserts that, when another woman, A.F., reported to FPS "that Heitstuman assaulted her on three occasions, the United States had an obligation to inform 'the local responding law enforcement authority.'"[151] Ms. Lauria contends that there was no "discretion or choice" here, and that had this federal regulation been followed, "Heitstuman would have been criminally charged by the State of Alaska in 2014" for the assaults against A.F. rather than in 2021, after Ms. Lauria came forward about the alleged assaults on her.[152] She maintains that, had that been the case, "it is almost certain that [she] would never have encountered Heitstuman, and therefore would not have been sexually assaulted."[153]

First, the Court finds that the challenged action "involve[s] an element of judgment or choice."[154] As the United States points out, 41 C.F.R. § 102-74.15(b) requires a federal agency to report "crimes and suspicious circumstances" to the local responding law enforcement authority "as appropriate," which leaves the agency with discretion in deciding whether doing so would be "appropriate."[155] Turning to the

---

[150] *See* Department of Homeland Security, *Federal Protective Service*, https://www.dhs.gov/federal-protective-service (last visited Apr. 9, 2024).

[151] Docket 80 at 28 (quoting 41 C.F.R. § 102-74.15(b)).

[152] Docket 80 at 28-29.

[153] Docket 80 at 29.

[154] *See Schurg*, 63 F.4th at 831.

[155] *See* Docket 82 at 10-11; *Nanouk*, 974 F.3d at 946 (noting that other phrases like "all practical efforts," "to the extent practicable," and "whenever feasible" confer discretion at step one).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 32 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 32 of 38

second step of the analysis, the Court finds that deciding whether to report certain crimes or suspicious circumstances to local law enforcement "involve[s] the kind of policy judgment that the discretionary function exception was designed to shield."[156] For example, in *Gonzales v. United States*, the Ninth Circuit held that, under guidelines permitting discretion, the FBI's decision to not disclose information about a reported threat to local law enforcement required weighing social and public policy concerns, such that its judgment was "the type of conduct to which a policy analysis could apply."[157] As the Circuit Court noted, "any agent choosing whether to disclose information must weigh the credibility and seriousness of the threatened criminal activity against the possible risks," such as to informants, victims, or ongoing investigations.[158] While neither party discuss this second step, the Court finds that the decision by DHS not to report A.F.'s allegations against Mr. Heitstuman to local law enforcement is one that is "susceptible to policy analysis."[159] Certainly, an agency's discretionary decision of reporting "crimes and suspicious circumstances" to local law enforcement, after first reporting it to FPS, would entail "weigh[ing] the credibility and seriousness" of the crimes or suspicious circumstances.[160] Because

---

[156] *United States v. Gaubert*, 499 U.S. 315, 332 (1991).

[157] 814 F.3d 1022, 1033 (9th Cir. 2016) (citation omitted).

[158] *Id.*

[159] *Gaubert*, 499 U.S. at 325.

[160] *See* 41 C.F.R. § 102-74.15(b); *Gonzalez*, 814 F.3d at 1033.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 33 of 38

FPS must receive such reports first and may take action on them, the agency's decision to involve or not involve other law enforcement would "surely implicate social, economic, and political judgments."[161]

Thus, the Court finds that 41 C.F.R. § 102-74.15(b) does not constrain the United States' "substantive discretion in a way that precludes applying the discretionary function exception here."[162]

### 2. DHS Ethics/Standards of Conduct

Ms. Lauria next contends that the United States was required to follow the DHS Ethics/Standards of Conduct, which provides: "Any behavior that reflects negatively upon DHS should be reported to the [Designated Agency Ethics Official]."[163]  Ms. Lauria asserts that Michael Shaw, Mr. Heitstuman's former direct supervisor, "informed numerous higher-ups within the Department of Homeland Security of his concerns regarding Heitstuman's behavior toward women," but that "they failed to act."[164]  Thus, Ms. Lauria contends that, had Mr. Shaw's concerns been taken

---

[161] *Gonzalez*, 814 F.3d at 1033 (citation omitted).

[162] *Miller*, 992 F.3d at 886 (citations omitted).  The United States also contends that 41 C.F.R. § 102-74.15(b) does not control because it does not address how federal agencies investigate alleged misconduct by employees.  Docket 82 at 10-11.  However, the Court is not persuaded that § 102-74.15(b), which contains a reporting requirement for federal agencies, is inapplicable simply because there are other regulations that address investigating employee misconduct.  Moreover, the United States cites to an FPS decision on disciplinary steps against Mr. Heitstuman for sexual misconduct that involved a different woman, not A.F., which is what Ms. Lauria alleges here.  *See* Docket 82 at 11 (citing to Docket 71-26).

[163] Docket 80 at 28 (quoting Docket 80-19 at 5).

[164] Docket 80 at 4-5.

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 34 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 34 of 38

seriously and had Mr. Heitstuman's superiors "reported [him] to the Designated Agency Ethics Official as required by policy[,] there is a chance A.F., and other victims, would have been spared."[165]

Although Ms. Lauria maintains that the Ethics/Standards of Conduct requires reporting Mr. Heitstuman's conduct to the Designated Agency Ethics Official, the Court agrees with the United States that the policy is discretionary, as it provides that such conduct "*should* be reported," not "must" or "shall" be reported.[166]  Beyond this, Ms. Lauria does not discuss whether such a decision "is of the kind that the discretionary function exception was designed to shield,"[167] or even why the ethics policy is applicable here when the alleged assaults committed by Mr. Heitstuman more appropriately implicate criminal, not ethical, matters.

Accordingly, the Court finds that Ms. Lauria has not met her burden in identifying a federal statute, regulation, or policy that constrained the United States' "substantive discretion in a way that precludes applying the discretionary function exception here."[168]  Finding that the discretionary function exception to the FTCA applies to the United States' hiring, training, and supervision of Mr. Heitstuman, the Court grants summary judgment to the United States on Count 11 and dismisses it

---

[165] Docket 80 at 29.

[166] *See* Docket 80 at 29; Docket 82 at 12.

[167] *Schurg*, 63 F.4th at 831 (internal quotation marks and citation omitted).

[168] *Miller*, 992 F.3d at 886 (citations omitted).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 35 of 38

with prejudice.

### c. Negligent Infliction of Emotional Distress

Finally, the United States asserts that Count 12—which alleges that "[t]he United States owed a duty [to] Plaintiff to use reasonable care to avoid causing emotional distress to Plaintiff[,] and it negligently breached this duty"—"arises out of the injuries set forth in the other Counts, so Count 12 must either merge with those Counts or be dismissed."[169]  The United State also contends that, "[t]o the extent Plaintiff is asserting the United States owes a duty of care when Heitstuman is acting outside the scope of his employment, such a claim is barred by the FTCA."[170]

Ms. Lauria contends that "the United States' negligence was so extreme as to permit a foreseeable assault on Plaintiff to occur," and that "the United States owed a duty to the Plaintiff and other women working in areas that Heitstuman exercised law enforcement authority to protect them from sexual assault that was readily foreseeable."[171]  However, Ms. Lauria's bare assertion that "everybody up in Alaska" in FPS management was negligent is insufficient to create a triable issue of fact.[172]

---

[169] Docket 71 at 2, 37; Docket 25 at ¶ 53.

[170] Docket 71 at 37 (citing 28 U.S.C. § 2679(b)).

[171] Docket 80 at 30-31 (citing to Michael Shaw's testimony at Docket 80-2 at 6).

[172] Docket 80 at 30 (quoting Michael Shaw's testimony at Docket 80-2 at 6).  In support of her position, Ms. Lauria cites to *Sheridan v. United States*, 487 U.S. 392 (1988), wherein the Supreme Court held that certain claims premised on the negligence of other government employees who allowed a foreseeable assault and battery may furnish a basis for government liability, because such a claim would not fall within the intentional tort exception to the FTCA. Docket 80 at 30. However, as Ms. Lauria herself points out, she is able to bring her case because the law enforcement exception allows her to seek recovery for Mr. Heitstuman's intentional torts.  Docket 80 at 30.  Moreover, in *Sheridan*, the plaintiff identified the three corpsmen who were alleged to

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 36 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 36 of 38

Furthermore, Ms. Lauria cannot recover under Alaska law based on a negligent infliction of emotional distress ("NIED") theory, because the "preexisting duty exception [in Alaska] is narrow," normally available only in "a contractual or fiduciary relationship."[173]  As the Alaska Supreme Court has held, a "general duty of care owed to all other members of the public . . . is not specific enough to meet the requirements of the [preexisting duty exception]."[174]  Finally, the Court agrees with the United States that, to the extent Ms. Lauria's NIED claim is premised on negligent supervision by DHS pursuant to the DHS Field Guide and Ethics/Standards of Conduct, such a claim would be barred by the discretionary function exception as previously discussed.[175]

For these reasons, the Court grants summary judgment to the United States on Count 12 and dismisses it with prejudice, but notes that this does not preclude Ms. Lauria from seeking emotional damages for the intentional tort claims.

---

have negligently caused the assault to occur.  Here, Ms. Lauria has not identified which specific government employees had a duty of care to her.

[173] *Watkinson v. Dep't of Corr.*, 540 P.3d 254, 272 (Alaska 2023).  There is also a bystander exception which allows for recovery when a bystander witnesses physical injury to another, but neither party asserts that it applies here, and the Court finds that it does not.  *See Schack v. Schack*, 414 P.3d 639, 641 (Alaska 2018).

[174] *Kallstrom v. United States*, 43 P.3d 162, 166 (Alaska 2002).

[175] *See Sabow v. United States*, 93 F.3d 1445, 1451-54 (9th Cir. 1996) (holding that the discretionary function exception precluded NIED claims based on discretionary actions taken by investigators and military lawyers during course of death investigation), *as amended* (Sept. 26, 1996).

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al*.
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 37 of 38

**CONCLUSION**

In light of the foregoing, IT IS ORDERED that:

- The United States' Motion to Partially Preclude Expert Opinion of Judy Gette at Docket 72 is GRANTED in part and DENIED in part as follows: Ms. Gette will be allowed to testify generally on power dynamics, the victim response known as "fawning" or "appeasement," how past trauma may influence responses to subsequent trauma, and on the long-term impacts of trauma such as sexual assault; her testimony is otherwise precluded, and she shall not testify regarding the specific facts of this case; and

- The United States' Motion for Summary Judgment at Docket 71 is GRANTED in part and DENIED in part as follows: Count 11 and Count 12 of the Third Amended Complaint are DISMISSED with prejudice.

A status conference is scheduled for **June 6, 2024, at 1:30 p.m.** in Anchorage Courtroom 2 to set a trial date on Plaintiff's remaining claims.

DATED this 13th day of May, 2024, at Anchorage, Alaska.

*/s/Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00210-SLG, *Lauria v. USA, et al.*
Order re Motion for Summary Judgment and Motion to Partially Preclude Expert Opinion of Judy Gette
Page 38 of 38

Case 3:20-cv-00210-SLG   Document 85   Filed 05/13/24   Page 38 of 38